# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ——————————————————— ) | |
| STORY OF STUFF PROJECT et al., ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No. 17-cv-00098 (APM)** |
| ) | |
| UNITED STATES FOREST SERVICE, ) | |
| ) | |
| **Defendant.** ) | |
| ——————————————————— ) | |

## MEMORANDUM OPINION AND ORDER

### I.

Plaintiffs Story of Stuff Project and Courage Campaign Institute (collectively, "Plaintiffs")
have filed numerous Freedom of Information Act ("FOIA") requests with the United States Forest
Service ("Defendant") in an effort to gain insight into Nestle Waters North America, Inc.'s
activities in Strawberry Canyon in the San Bernardino National Forest.  *See* Pls.' Mot. for Costs
& Attys.' Fees, ECF No. 50 [hereinafter Pls.' Mot.], Decl. of Rachel S. Doughty in Supp. of Pls.'
Mot., ECF No. 50-4 [hereinafter Doughty Decl.], ¶ 31.  Defendant's failure to respond to one such
request, initially made in November 2016, triggered this lawsuit.

After Plaintiffs filed this action in January 2017, Defendant began to produce documents
on a rolling basis, *see* Joint Status Report, ECF No. 15, but continued to withhold others, including
some documents that purportedly contained Nestle trade secrets—but that were ultimately revealed
to be in the public domain, *see* Doughty Decl. ¶¶ 10–30; 34.  The parties engaged in two rounds
of summary judgment briefing, neither of which fully resolved their disputes.  *See* Mem. Op. &
Order, ECF No. 27 [hereinafter Mem. Op.]; Minute Order, Sept. 19, 2019.  The parties eventually

settled all issues except the question of fees.  *See* Joint Status Report, ECF No. 46.  Plaintiffs filed

a motion for fees and costs; after the motion was fully briefed, the court held a hearing at which it

announced the first portion of its ruling on the motion:  that Plaintiffs were eligible for and entitled

to fees under FOIA.  *See* Minute Order, Nov. 5, 2020 (granting in part Plaintiffs' motion for fees

and costs, holding that "Plaintiffs have established both eligibility and entitlement to an attorneys'

fee award").  The court deferred ruling on the reasonableness of the fees Plaintiffs sought.  *Id.*

That question is now before the court.[1]

## II.

"[T]he plaintiff who has proven both eligibility for and entitlement to fees must submit his

fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and

(b) the hourly fee claimed."  *Judicial Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363 (D.C. Cir.

2006) (internal quotation marks and alteration omitted).  Courts have "broad discretion" to

determine an appropriate fee award, and they have the authority to modify fee requests "based on

the reasonableness of the desired amount and the facts of the case."  *Webster v. U.S. Dep't of Just.*,

No. 02-cv-603 (RC), 2021 WL 4243414, at *8 (D.D.C. Sept. 17, 2021).  In conducting its

reasonableness analysis, the court "should always keep in mind the basic policy of the FOIA to

encourage the maximum feasible public access to government information and the fundamental

purpose of section 552(a)(4)(E) to facilitate citizen access to the courts to vindicate their statutory

rights."  *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977).

Plaintiffs' counsel's rates are not in issue.  *See* Stipulation Regarding Reasonable Hourly

Rates for Pls.' Mot. for Costs & Attys.' Fees, ECF No. 49.  So, the court's sole task is to determine

whether the total hours worked translate to a reasonable fee award.

---

[1] The court apologizes to the parties for the length of time it has taken to resolve this matter.

## III.

### A.

Before the court proceeds with that analysis, some additional background is necessary. After the court ruled in Plaintiffs' favor on eligibility and entitlement, the court explained that it could not yet rule on the reasonableness of Plaintiffs' requested fees for two reasons:  (1) "there need[ed] to be some discount taken into consideration for those issues on which [Plaintiffs] either [did not] prevail[] or partially prevailed," and (2) the "relationship between this case and [a related] case before Judge McFadden," *Story of Stuff Project v. United States Forest Serv.*, No. 18-cv-00170 (TNM) (D.D.C.), "remain[ed] unclear."  Hr'g Tr. (draft), Nov. 5, 2020, at 17–18.  The court ordered the parties to "meet and confer and attempt to resolve the fees dispute in light of the court's ruling" and submit a joint status report.  Minute Order, Nov. 5, 2020.

But the parties could not reach agreement, and they filed separate status reports.  The court construed Plaintiffs' status report as a supplement to their initial fees motion and reply.  Minute Order, Dec. 21, 2020.  In the supplement, Plaintiffs did three things:  First, they partially addressed their degree of success on the merits by updating their billing records to excise and discount entries related to their unsuccessful litigation of Defendant's withholdings under FOIA Exemption 5. Pls.' Status Report, ECF No. 57 [hereinafter Pls.' Suppl.].  Second, they explained that there was no overlap in the time entries for this case and the related case before Judge McFadden.  *Id.*  And third, they increased their requested fees to include their efforts after the November 5 hearing.  *Id.*

The court allowed Defendant to respond to Plaintiffs' supplement but ordered it to limit its response to the issues addressed in Plaintiffs' supplement (the same issues the court identified in the November 5 hearing), because Defendant had waived any arguments not raised in its opposition to Plaintiffs' fees motion.  Minute Order, Dec. 21, 2020 (citing *Zuckerman Spaeder,*

3

*LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011)).[2]   Defendant then submitted a supplemental memorandum contesting the propriety of compensating Plaintiffs for fees-related work done after the November 5 hearing and attacking Plaintiffs' Exemption 5 excisions and reductions as inadequate to capture their lack of success on the merits.   Def.'s Suppl. Mem. Regarding Pl.'s Request for Reimbursement of Attys.' Fees & Costs, ECF No. 58 [hereinafter Def.'s Suppl.].

## B.

With this background established, the court first addresses whether Plaintiffs may be compensated for "the additional time invested in this case since the hearing on the Motion for Costs and Fees."  Pls.' Suppl. at 2; *see also* Pls.' Suppl., Third Decl. of Rachel Doughty in Supp. of Pls.' Mot. for Costs & Attys.' Fees, ECF No. 57-1 [hereinafter Third Doughty Decl.], Ex. A [hereinafter Compiled Billing Records].   Defendant argues that this time was "devoted to complying with the [c]ourt's direction to meet and confer in an attempt to resolve a fee amount," and that it "should not be recoverable, as allowing reimbursement would discourage good faith efforts to reach resolution in such cases and unfairly penalize Defendant for trying to resolve the matter."  Def.'s Suppl. at 6 & n.6.  The court agrees.  As of the November 5 hearing, the merits of the underlying FOIA litigation had long since been resolved, and at the hearing itself, the court recognized Plaintiffs' eligibility for and entitlement to fees.  Only the reasonableness of Plaintiffs' request remained for the parties to attempt to resolve.   "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable," *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225, 239 (D.D.C. 2012), but in the court's view, Plaintiffs' request for

---

[2] The only issue relating to the reasonableness of Plaintiffs' requested fees raised by Defendant in its opposition to the fees petition was the ostensible overlap between the work done in this litigation and the work Plaintiffs performed in the case before Judge McFadden.  Def.'s Opp'n at 10–11.

compensation for time spent after the November 5 hearing is not reasonable in light of the court's resolution of two of the three prongs of the fees inquiry and its request that the parties attempt to resolve the sole remaining issue efficiently.  It is not reasonable for Plaintiffs to receive fees for work that is, in the court's view, corrective of shortcomings the court identified in Plaintiffs' fees petition.

The court therefore will exclude from the lodestar all billing entries following the November 5 hearing and cap Plaintiffs' recovery at the amount they requested in their reply in support of their fees motion: $151,093.05. Pls.' Reply in Supp. of Mot. for Costs & Attys.' Fees, ECF No. 53 [hereinafter Pls.' Reply], at 11.[3]

## C.

Next, the court considers the degree to which Plaintiffs' requested fees should be discounted to reflect their success on the merits.  To the extent they address their lack of success on the merits, Plaintiffs propose (1) excising all time entries spent working entirely on Exemption 5, as to which the court entered judgment in favor of Defendant after the first round of summary judgment briefing, Mem. Op. at 26, and (2) applying a 20% discount to other entries that plausibly include some work on Exemption 5 but cannot easily be segregated.[4]  Pls.' Suppl. at 1–

---

[3] In their reply, Plaintiffs sought compensation for 3 hours they anticipated devoting to preparing for and attending oral argument on the fees motion.  Pls.' Reply, Second Decl. of Rachel S. Doughty in Supp. of Pls.' Mot., ECF No. 53-1, ¶ 5 (noting that Plaintiffs included in their calculations an "anticipate[d] . . . additional 2 hours preparing for a hearing on [the] matter and 1 hour attending [that] hearing").  But in their supplement, Plaintiffs requested fees for 7.3 actual hours of preparation for and participation in the November 5 hearing.  *See* Compiled Billing Records at 7. Defendant argues that Plaintiffs should be held to their original estimate, and that any "excess" over the anticipated three hours "should be deemed unreasonable and rejected."  Def.'s Suppl. at 6 n.6.  Plaintiffs have not explained why their hearing preparation was almost two-and-a-half times what they estimated it would be.  As a result, the court declines to award fees for hours spent preparing for the November 5 hearing exceeding the 3 hours for which Plaintiffs sought fees in their reply.

[4] Plaintiffs estimate that Exemption 5 took up about 20% of their briefing during the first round of summary judgment. Pls.' Suppl. at 2; *see also Jud. Watch, Inc. v. U.S. Dep't of Com.*, No. 05-5366, 2007 U.S. App. LEXIS 2337, at *3 (D.C. Cir. Jan. 31, 2007) ("When, as here, counsel has not allocated his time between claims, the court may use the number of pages of argument directed at the losing claim as a proxy for allocating fees-for-fees."); *Elec. Priv. Info.*

2.  Defendant raises additional issues on which Plaintiffs did not prevail and urges the court to apply an across-the-board discount of between 20% and 40%.  Def.'s Suppl. at 8.

As an initial matter, the court agrees with Defendant that issues beyond Exemption 5 are fair game in evaluating Plaintiffs' success on the merits.  Defendant argues that Plaintiffs' requested fees should be further discounted to reflect their incomplete success on Exemptions 4 and 6.  *Id.* at 8–12.  This argument is within the scope of the court's order following the November 5 hearing.  Minute Order, Dec. 21, 2020 (explaining that Defendant could respond to Plaintiffs' supplement, but only to the extent of responding to the matters raised in the supplement—that is, the open issues the court raised during the November 5 hearing, which included Plaintiffs' degree of success on the merits); Hr'g Tr. (draft), Nov. 5, 2020, at 17–18 (identifying as "example[s]" of Plaintiffs' limited success on the merits their unsuccessful litigation of Exemptions 5 and 6).  The court therefore will consider issues as to which Plaintiffs did not succeed on the merits including but not limited to Exemption 5.

"There is no precise rule or formula for" determining how to discount requested fees to reflect a plaintiff's degree of success on the merits.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for . . . limited success" on the merits.  *Id.* at 436–37.  As noted above, Plaintiffs have proposed a hybrid approach—including both specific excisions and a 20% reduction to nonsegregable time entries—because they did not allocate their time by claim or issue.  *See* Pls.' Suppl. at 2 ("[W]here [a time entry] was not segregable, such as edits to entire briefs, a 20% discount was applied . . . .").  But Plaintiffs' proposal contemplates only their lack

---

*Ctr. v. U.S. Dep't of Homeland Sec.*, 197 F. Supp. 3d 290, 297 (D.D.C. 2016) (reducing fees by the percentage of pages in summary judgment briefs devoted to issue on which plaintiff did not prevail).

of success as to Exemption 5.  In order to extend Plaintiffs' approach across other issues on which they did not fully prevail (discussed below), the court would have to parse the billing records, classify entries as segregable or nonsegregable, excise the segregable ones, and then apply a separate percentage discount to the nonsegregable ones.  "[T]he judicial role is not to comb through endless lists of billing entries to gather data the parties have not seen fit to make clear," however. *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 414 (D.D.C. 2015). Instead of taking such a burdensome approach, the court will exercise its discretion to "simply reduc[e] the proposed lodestar fee by a reasonable amount without performing an item-by-item accounting." *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980) (internal quotation marks omitted).  An across-the-board reduction appropriately provides, as Defendant puts it, "a mechanism for assessing Plaintiffs' degree of success in the litigation as a whole" where "Plaintiffs have failed to afford the [c]ourt with a reliable basis to identify specific hours that should be eliminated." Def.'s Suppl. at 10.

A 20% reduction captures Plaintiffs' success during the first round of summary judgment. In that phase, which represents a significant portion of the hours for which Plaintiffs seek compensation, Plaintiffs litigated Exemption 4, 5, 6, and 9.  *See generally* Pls.' Cross-Mot. for Summ. J., Statement of Material Facts, Mem. in Supp., & Resp. to Def.'s Mot. for Summ. J. (Corrected), ECF No. 25 [hereinafter Pls.' First MSJ]; Pls.' Reply in Supp. of Mot. for Summ. J., ECF No. 26 [hereinafter Pls.' First MSJ Reply].  As previewed above, the parties now agree that Plaintiffs may not recover fees for time spent litigating Exemption 5 because the court entered judgment in favor of Defendant on that issue.  *See* Pls.' Suppl. at 1–2; Def.'s Suppl. at 8–9. Plaintiffs' arguments as to Exemption 5 took up just under 20% of their briefs during the first round of summary judgment (which in turn comprised the bulk of the summary judgment briefing

across both rounds).[5]  Pls.' First MSJ at 12–15; Pls.' First MSJ Reply at 6–8.  Plaintiffs suggest

with their hybrid approach that an across-the-board reduction by 20% would be too severe, but

Exemption 5 was not the only issue on which they did not prevail during the first round of summary

judgment; their degree of success on the other issues they litigated during that phase justifies

reducing fees beyond Plaintiffs' proposal.

   Specifically, the court denied both parties' motions for summary judgment on

Exemption 6, which took up 4 pages of Plaintiffs' briefing (12%).  Mem. Op. at 26; Pls.' First MSJ

Reply at 1–5.  Defendant ultimately agreed to produce some documents initially withheld pursuant

to Exemption 6, and so Plaintiffs say they "fully prevailed" on the Exemption 6 redactions they

challenged.  Third Doughty Decl. ¶ 3.  But as Defendant notes, those disclosures were prompted

by the litigation before Judge McFadden, Def.'s Suppl. at 9; Status Report, ECF No. 40, which

rendered the Exemption 6 issue in this litigation moot, *see* Hr'g Tr. (draft), Aug. 28, 2019, at

11–12.  Next, the court denied both parties' motions as to Exemption 4, specifically rejecting

Plaintiff's arguments as to confidentiality, which took up about 6 pages, or 15% of the briefing.

Mem. Op. at 12–15, 26; Pls.' First MSJ at 7–11; Pls.' First MSJ Reply at 8–10.  Plaintiffs did

eventually succeed in obtaining materials initially withheld under Exemption 4, though not on

confidentiality grounds.[6]  Finally, the court also denied both parties' motions as to Exemption 9

for the same reasons it denied summary judgment on Exemption 4; Plaintiffs spent another 4 pages

of their briefing on Exemption 9 (again, 12%).  Mem. Op. at 12 n.4; Pls.' First MSJ at 15–17; Pls.'

---

[5] Plaintiffs' substantive briefing for the first round of summary judgment comprised approximately 33 pages (16 for Plaintiffs' first cross-motion and opposition, Pls.' First MSJ, and 17 for their reply, Pls.' First MSJ Reply).  The substantive briefing for the second round took up about 15 pages (approximately 9 for the cross-motion and opposition, Pls.' Renewed Mot. for Summ. J., ECF No. 32, and approximately 6 for the reply, Suppl. Reply to Def.'s Resp. to Pls.' Renewed Mot. for Summ. J., ECF No. 37).

[6] Plaintiffs' briefing as to Exemption 4 also included arguments that the relevant information was already public.  Pls.' First MSJ at 5–7.  They ultimately prevailed on this issue.

First MSJ Reply at 10–12.   In light of Plaintiffs' conclusive loss on Exemption 5 and their incomplete success on these other issues during the first round of summary judgment, a 20% reduction across the board is appropriate.  *See Bloomgarden v. U.S. Dep't of Just.*, 253 F. Supp. 3d 166, 178 (D.D.C. 2017) (applying a percentage-based discount where "plaintiff's success . . . was not 'proportional to the efforts expended by counsel[]'" (quoting *George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992)).

Plaintiffs' lack of success on the second round of summary judgment justifies another 10% added to the overall discount.   Neither party prevailed on this round of summary judgment.   Minute Order, Sept. 19, 2019 (denying both parties' motions).   And importantly, Plaintiffs likely could have avoided this round of motions practice altogether by disclosing sooner some of the documents they submitted during the second summary judgment phase to establish that the records withheld pursuant to Exemption 4 were in the public domain.   *See* Hr'g Tr. (draft), Sept. 19, 2019 (discussing two attachments to Plaintiffs' cross-motion that satisfied their "burden of production . . . to come forward to show that the responsive information [to their FOIA requests was], in fact, in the public domain"); Pls.' Renewed Mot. for Summ. J., ECF No. 32, Decl. of Zachary Marker, ECF No. 32-3 [hereinafter Marker Decl.], Ex. A; Marker Decl. Ex. E.   It appears that Plaintiffs possessed at least some of these documents when the first round of summary judgment briefing began in December 2017:  the California State Water Resources Control Board evidently released several of the records attached to Plaintiffs' renewed motion in response to 2016 and 2017 California Public Records Act requests.   Marker Decl. ¶¶ 2–6.   After Plaintiffs submitted these documents, the court denied the parties' cross-motions and ordered the government to compare the documents provided by Plaintiffs with those withheld; to that end, Plaintiffs were tasked with bringing forward all evidence the government could use to "make the comparison and

make the determination as to whether it possesse[d] anything that [was], in fact, in the public domain already." Hr'g Tr. (draft), Sept. 19, 2019, at 14–16. Soon thereafter, the parties filed a status report indicating that as a result of the comparison, "most substantive issues ha[d] been resolved." Joint Status Report, ECF No. 45. Earlier disclosure of the documents attached to the renewed cross-motion could have abbreviated this process. In the court's view, hours spent on litigation that could have been avoided are excessive, which justifies a further discount of 10% here.

## D.

During the November 5 hearing, the court also raised as an open issue the relationship between the case before Judge McFadden and this case. Based on the declaration attached to Plaintiffs' supplement, the court is satisfied that none of the hours for which Plaintiffs seek compensation were spent on the other case instead of this one. *See* Third Doughty Decl. ¶ 7. And to the extent the litigation before Judge McFadden—rather than this litigation—is what prompted Defendant's disclosures, that is already reflected in the discount described above for Plaintiffs' failure on the merits as to Exemption 6. No further discount is warranted based on the relationship between the two cases.

## E.

In total, then, the court will apply a 30% reduction applied to the lodestar (as of the November 5 hearing, as discussed above) to reflect the degree of Plaintiffs' overall success on the merits.

10

## IV.

For the foregoing reasons, the court grants in part Plaintiffs' Motion for Costs and Attorneys' Fees, ECF No. 50.  The court awards costs and fees as follows:

| | |
|---|---|
| Fees | $105,765.14[7] |
| Costs | $449.85[8] |
| **Total** | **$106,214.99** |

Dated:  May 13, 2022

Amit P. Mehta
United States District Court Judge

---

[7] Calculated by reducing lodestar by 30%.
[8] Pls.' Reply at 11.